IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF ILLINOIS
                         EASTERN DIVISION

NOEL PADILLA, et al.,          )
                               )
           Plaintiffs,         )
                               )
     v.                        )    No. 06 C 5462
                               )
CITY OF CHICAGO, et al.,       )
                               )
           Defendants.         )

                            MEMORANDUM

    This memorandum is occasioned by the November 10 issuance of the long-awaited opinion of our Court of Appeals in <u>Bond v. Utreras</u>, No. 07-2651, 2009 WL 3737802. For a full understanding of any claimed relationship between <u>Bond</u> and this Court's recent rulings in this case, some background explanation is in order.

    This long-pending 42 U.S.C. § 1983 ("Section 1983") action against the City of Chicago ("City") and a number of its police officers has been delayed in substantial part by the fact that the targeted officers include some members of the now-notorious SOS unit who have been indicted and are awaiting prosecution for alleged violations of state criminal statutes.[1] This Court has sought to balance the rights of the plaintiffs and the defendant officers under those circumstances in a number of ways -- for example, it has not permitted the depositions of those officers

---

    [1] It has also been reported that those officers, and perhaps some others, are under investigation by the federal criminal authorities. Meanwhile a newly-received filing by plaintiffs' counsel reveals that two of the indicted officers have pleaded guilty to state charges against them.

to proceed before their criminal trials,[2] because their inevitable invocation of their Fifth Amendment privileges against self-incrimination in response to virtually all inquiries during those depositions would become the basis for adverse inferences in this civil action, as it could not in their criminal cases.

Another aspect of narrowing the potential discovery in this case from the norm has been this Court's issuance of a broad protective order, the current version of which[3] includes (among other things) the treatment of complaint register ("CR") files on an "Attorneys' Eyes Only" basis--that latter restriction being based on the then-assumed premise that such files implicated the privacy interests of the officers who had been charged with misconduct by members of the public. Then, early in July 2009, a letter sent by plaintiffs' counsel to City's counsel sought the public release of a very large volume of CR files that had been produced in discovery under that protective order.

---

[2] This Court has been at a loss to understand why those trials have not been held by now, and counsel for the officers in this case--who do not represent them in the criminal cases--have been unable to provide any real enlightenment either. Because fairness to the plaintiffs here cannot permit this case to be held hostage indefinitely, the existing constraints on discovery from those defendants require ongoing reexamination.

[3] As City's July 14, 2009 Motion To Enforce Protective Order and for Extension of Time ("Motion") states:

> After several rounds of revisions, conferences among counsel of record, and hearings before this Court, the Court entered the Revised Qualified HIPAA and Confidential Matter Order on May 29, 2009. (Dkt. 225.)

City responded to that letter by filing its July 14 Motion referred to in n. 3, urging among other grounds that this Court should defer ruling on plaintiffs' counsel's effort to go public with the CRs pending the issuance of an opinion in Bond, a case that involved a far different factual situation but that might perhaps give rise to some language that could cast light on the issues before this Court. This Court did not find that suggestion particularly persuasive, because Bond had then been awaiting decision for more than a year (it had been argued on June 3, 2008) and it could not be predicted with any assurance when the opinion would be forthcoming.

Accordingly this Court decided to address on the merits the issue posed by defendants' Motion. And as if to demonstrate that timing is everything, just a few days later (on July 20) the Illinois Appellate Court for the Fourth District issued its opinion in Gekas v. Williamson, 2009 WL 2185509--an opinion that scotched the premise on which the confidentiality of the CRs had been assumed and on which the restrictions in the protective order had been thought to be justified: Gekas held that police personnel had no rights of privacy in the content or results of such charges of misconduct lodged against them by members of the public.

Hence on August 13 this Court ruled orally, based on the just-described Gekas ruling, that the "Attorneys' Eyes Only"

3

restriction should be lifted, at which point the CRs might then be made publicly available if plaintiffs' counsel so chose--a constitutionally protected right (see, e.g., <u>Jepson Inc. v. Makita Elec. Works, Ltd.</u>, 30 F.3d 854, 858 (7th Cir. 1994) and cases cited there). Although this Court's ensuing brief August 14 memorandum confirming its oral ruling has already quoted part of the <u>Gekas</u> opinion, that language (at *8, emphasis added) is worth repeating as a vital part of the predicate for considering the relevance (if any) of <u>Bond</u> to this case:

> Unlike a performance evaluation, the Division's records are not generated for Gillette's personal use, and they do not concern his personal affairs. <u>What he does in his capacity as a deputy sheriff is not his private business. Whether he used excessive force or otherwise committed misconduct during an investigation or arrest is not his private business.</u> Internal-affairs files that scrutinize what a police officer did by the authority of his or her badge do not have the personal connotations of an employment application, a tax form, or a request for medical leave. Not every scrap of paper that enters a personnel file necessarily is personal information.

In early September various of the defendant officers, plus a number of individual intervenors and two intervening officer associations, filed appeals from this Court's <u>Gekas</u>-based ruling, seeking to enforce the May 2009 protective order as originally issued.[4] Then just last week the long-awaited <u>Bond</u> opinion did

---

[4] Those same persons and associations are seeking to wage their battle against public disclosure on more than one front: On October 1, instead of simply pursuing the protocol that this Court had established to protect against disclosure of truly sensitive and confidential material contained in CRs (via

4

come down from the Court of Appeals, and this Court has promptly studied that opinion carefully to see whether a remand should be requested for possible reconsideration of this Court's August rulings (cf. 7th Cir. Rule 57, which--although dealing with a very different situation--suggests the possible availability of such a remand request).

This Court's analysis has led to the conclusion that no such remand request should be issued. But because a consideration of <u>Bond</u> may well occupy part of the Court of Appeals' attention on the appeal of this Court's rulings, this memorandum is being issued to explain the reasons for that conclusion.

Because of more than one major difference between the situation before the Court of Appeals in <u>Bond</u> and the posture of this case before this Court, much of the lengthy <u>Bond</u> opinion-- particularly its entire discussion dealing with standing, which occupies the bulk of that opinion--has no arguable relevance here and therefore requires no discussion. As part of that analysis, however, the <u>Bond</u> opinion does speak of the filing of documents (as contrasted with their production in discovery) as the triggering factor for the presumptive openness of documents to the public--and in this Court's view that distinction should not

---

appropriate redactions), they renewed their attack on disclosure as such. That subject is still in the briefing process, but meanwhile this memorandum reconfirms some basic principles that govern that dispute.

5

be permitted to divert into the wrong channel the very different situation presented by this case.

It must not be forgotten that this case poses the flip side of the Bond analysis. What has happened here is that certain documents (CRs) had been produced to plaintiffs' counsel under a restriction that had been created as the consequence of the mistaken premise that the restriction codified and protected a privacy right of the charged officers--a then-assumed right under state law, not under a federal statute or the federal Constitution. If no such restriction had been imposed, the production of the CRs to plaintiffs' counsel would have left them free to deal with the documents as they wished, for example by revealing them publicly. And when the assumed underpinning for that mistaken premise was persuasively demolished by Gekas, defendants had no right to complain about the desire of plaintiffs' counsel to put the situation into the same posture as if no ill-conceived restriction had been imposed to begin with.

This is not at all, then, a situation in which members of the public, having no arguable standing in the litigation itself, seek to assert rights with respect to unfiled documents--a subject that occupied a major portion of the Bond opinion in the course of its dealing with issues of standing that find no parallel here. Instead the question in this case is whether officers who have no right of privacy in those CRs can somehow

6

force them to be kept under wraps, when the plaintiffs' counsel to whom they have been produced wish to deal with them otherwise.[5]

One last point should perhaps be mentioned: the brief reference to Gekas in footnote 10 to the Bond opinion (2009 WL 3737802, at *11), which included this statement in dictum:

> These cases [Gekas and an Illinois Supreme Court opinion issued a bit earlier] are difficult to reconcile with Lieber and Copley Press. We need not try to predict how the Illinois Supreme Court might resolve the conflict.

But as this Court explained in greater detail in its August 14 memorandum, in the circumstances of this case Copley poses no conflict with Gekas--and the same is true of the Lieber case cited in Bond.

It should be remembered that the question here, unlike the issue posed in those cases, is not one presented under the Illinois Freedom of Information Act, involving only the rights (or the absence of rights) conferred on members of the public. This Court is satisfied that on the issue that was addressed in

---

[5] Nor can the officers argue with any force that they were somehow misled in producing the CRs in reliance on the protective order--that they would have resisted producing the CRs if they had known about the possibility of public disclosure. That hypothetical proposition would perforce have to be addressed in light of what Illinois law is now known to be through Gekas--the absence of an enforceable right of non-production on the part of the officers. If that issue had been disputed before this Court with the realization now made clear by Gekas, the officers would unquestionably have lost that battle.

7

Gekas and that has been before this Court--as Gekas put it, "whether [an officer] used excessive force or otherwise committed misconduct during an investigation or arrest is not his private business"--the Illinois Supreme Court would reach the same result as did the Gekas court.

In summary, then, this Court has decided that no request for a remand for possible reconsideration is called for. And that being so, no action will be taken here to affect the progress of the pending appeals in the regular course.

_____
Milton I. Shadur
Senior United States District Judge

Date: November 16, 2009