UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NOEL PADILLA, et al., | ) |
| Plaintiffs, | ) ) ) |
| v. | ) Case No. 06-C-5462 |
| CITY OF CHICAGO, et al., | ) Magistrate Judge |
| Defendants. | ) Arlander Keys |

## MEMORANDUM OPINION AND ORDER

This case is before the Court on Plaintiffs' Motions to Compel Interrogatory Responses and Document Production from Defendant City of Chicago. Plaintiffs sued Defendants, alleging that several Chicago Police Officers (the "Individual Defendants") falsely imprisoned Noel Padilla, and illegally searched his family members' homes. Plaintiff also brings a *Monell* claim[1] against the City of Chicago ("the City"), alleging that the Individual Defendants' misconduct was a result of the execution of the City's policy or custom. The parties dispute the reasonable parameters of discovery with regard to the claims against the City and the Individual Defendants. For the reasons set forth below, the Plaintiffs' Motion to Compel Discovery is granted in part and denied in part.

---

[1] *See Monell v. Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

## BACKGROUND FACTS

Plaintiffs allege that in 2005, several Chicago Police Officers falsely arrested Noel Padilla; illegally searched his family's homes; and stole his money. (Pls.' Second Mot. Compel Disc. ¶ 2.) Plaintiffs filed suit under 42 U.S.C. § 1983 against the City and the Individual Defendants for the alleged violation of their Fourth Amendment rights.

During the course of this litigation, Plaintiffs have served Defendants with written discovery requests calling for the production of voluminous documents. Although the City has produced many of the documents and agreed to produce others, Plaintiffs have complained that Defendants have been slow to comply with the discovery requests. The parties have been unable to reach an accord on the appropriate scope and timeframe of discovery, and Plaintiffs filed two Motions to Compel; the first on March 30, 2009 and the second on September 10, 2009. Those Motions are the subject of this Opinion and Order.

## DISCUSSION

Under the Federal Rules of Civil Procedure, courts should permit "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Relevant information sought to be discovered need not be admissible at trial; rather, it is enough that "the discovery appears reasonably calculated to lead to the discovery of

admissible evidence." *Id.* With these standards in mind, the Court analyzes Plaintiffs' Motion to Compel Discovery.

## I. Privileges

Rule 26's presumption in favor of discovery may be overcome by the existence of a privilege. In response to Plaintiffs' Motion to Compel, Defendants argue that the withheld information is protected by the following privileges: law enforcement investigative information; grand jury secrecy; and work product. The Court will discuss each privilege, and the allegedly privileged information, in turn.

### A. The Law Enforcement Investigative Privilege

#### 1. The C.R. Files

The City has produced over 200 CR files in this case, but has withheld three CR investigation files that remain open. Notably, the city argues that these three files are protected under the law enforcement investigative privilege, incorporated under Fed. R. Civ. P. 26(b). The law enforcement investigative privilege is a "qualified privilege." *Kampinen v. Individuals of Chicago Police Dep't*, No. 00 C 5867, 2002 WL 238443 at *4 (N.D. Ill. Feb. 19, 2002). Its purpose "is to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals

involved in an investigation, and otherwise to prevent interference with an investigation." *Lewis v. City of Chicago*, No. 04 C 3904, 2004 WL 2608302 at *1 (N.D. Ill. Nov. 16, 2004) (quoting *In re Dept. of Investigation of New York*, 856 F.2d 481, 485 (2d Cir.1988)). Courts analyzing this privilege balance "the need of the litigant who is seeking privileged investigative materials-against the harm to the government if the privilege is lifted." *Id.* at **1-2.

First, however, "[t]he party claiming the privilege . . . bears the burden of justifying application of [it]." *Doe v. Hudgins*, 175 F.R.D. 511, 514 (N.D. Ill. 1997). Before the Court applies the balancing test, "'the responsible official in the [governmental] department [asserting the privilege] must lodge a formal claim of privilege, after actual personal consideration, specifying with particularity the information for which protection is sought, and explain why the information falls within the scope of the privilege.'" *Lewis*, 2004 WL 2608302, at *2 (quoting *Pontarelli Limousine, Inc. v. City of Chicago*, 652 F.Supp. 1428, 1431 (N.D. Ill. 1987)).

In this case, the Defendants have not met that burden. The Defendants allege this privilege for the first time in their response to Plaintiffs' Motion to Compel. In *Lewis*, the court addressed a similar set of facts. There, the plaintiff sought to

compel production of a C.R. file that was part of an underlying criminal investigation. *Id.* at 2. The defendants raised the law enforcement investigatory privilege for the first time in their opposition brief. *Id.* The court concluded that the defendant's failure to provide "evidence indicating that a 'responsible official' ha[d] determined that the privilege [wa]s applicable" or "an explanation from such an official about why the information in the CR file falls within the scope of the privilege," barred the defendant from asserting the privilege. *Id.*

This case poses a similar problem. The Defendants asserted the privilege in their oppositional brief without providing any evidence that a "responsible official" had ever assessed the C.R.s in question. Thus, the Defendants' failure to properly assert the privilege establishes a procedural bar to their asserted privilege.

The Court instructed Defendants to submit the C.R.s for *in camera* review, to enable the Court to balance the Defendants' need to maintain the confidentiality of its ongoing investigations against the Plaintiffs' entitlement to relevant materials. Had the Defendants complied with the privilege's procedural requirements, the balance between the Plaintiffs' need for the material and the potential harm to the City would

tilt in favor of Defendants- at least with respect to some portions of the CRs.

Defendants claim that disclosing the information would taint the integrity of ongoing investigations. By withholding the production of these C.R.s, Defendants argue, the Court will prevent the witnesses, complainants, or the accused- who are not involved in this lawsuit- from accessing the C.R.s while they are under investigation.

After reviewing the materials, the Court agrees that some sections of the submitted C.R.s, particularly the Summary Report Digests, arguably fall within the protections of the privilege. Unlike the C.R. this Court examined in *Bond v. Utreras*, No. 04 C 2617, 2006 WL 1343666, at *2 (N.D. Ill. May 12, 2006), which "contain[ed] purely factual information that is largely known to all involved parties," the Summary Reports in the C.R.s submitted in the instant case describe how the investigation was launched and conducted. They disclose the identify of witnesses who were contacted and interviewed, as well as the investigators' assessments of whether criminal charges might be filed against some of the officers under investigation. In short, they reveal more than simply the arrestees' and the officers' statements.

The Court acknowledges that the C.R.s may be relevant to Plaintiffs' claims against the Defendants, since the claims

6

detailed in the CRs, like Plaintiff's claims, involve allegations that officers allegedly abused their authority. *Accord, Vodak v. City of Chicago*, 2004 WL 1381043 at *5 (N.D. Ill. 2004)("Numerous courts have held that the . . . complaint histories of defendant officers are relevant in § 1983 actions involving police misconduct, particularly where, as here, plaintiffs allege a *Monell* . . . claim against the municipality. Moreover, disciplinary records containing any similar factual allegations may be relevant and admissible under Rule 404(b) to prove motive, intent, and/or modus operandi.") (citations omitted). However, the Court will give the City the opportunity to demonstrate whether portions of the three submitted C.R.s are entitled to protection under the law enforcement investigative privilege, by complying with the privilege's procedural requirements and detailing why portions of the submitted C.R.s should be protected on or before December 28, 2009.

### 2. The SOS Documents and Recordings

The same procedural bar prevents Defendants from asserting the law enforcement investigatory privilege in response to Plaintiffs' interrogatory asking what steps the Chicago Police Department has taken to preserve documents and recordings[2] that

---

[2] Plaintiffs assert that "if the city was in fact actually investigation [sic] SOS, then (among other things) it would have preserved the recordings at issue in this request (which would have likely generated the strongest evidence available against

would demonstrate the activity of the Special Operations Sections ("S.O.S.") from 2003 through 2006. Again, Defendants failed to provide any evidence that a responsible official assessed the evidence in question and determined that it fell within the scope of the privilege. As such, Defendants are procedurally barred from raising the privilege with respect to the S.O.S. Recordings. *See Lewis,* 2004 WL 2608302, at \*2.

Discovery into this issue is permissible only if Plaintiffs can demonstrate that it is "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. Pro. 26(b). Plaintiffs asked for any recordings or documents "that would demonstrate or reflect the activity and communications of the" SOS officers. (Pl. Santiago's First Set Interrogs., No. 1.) Plaintiffs argue that the requested information would have provided strong evidence against the officers on the criminal charges. As such, the Plaintiffs contend that these recordings, coupled with the City's inaction, would support Plaintiffs' claims of deliberate indifference in this case.

"A finding of deliberate indifference requires a showing that the officials were aware of a substantial risk of serious injury . . . but nevertheless failed to take appropriate steps

---

the officers on the criminal charges.) Unless a specific request is made to preserve the recordings, they are destroyed within thirty days pursuant to the Department's retention policy." Pls' 9/10/2009 Mot. To Compel at p 7.

to protect [an individual] from a known danger." *Frake v. City of Chicago*, 210 F.3d 779, 782 (7th Cir. 2000). The discovery requested here has the potential to support this finding, since the recordings may provide examples of officers abusing their authority. The City's preservation of such information would indicate its knowledge of the problem, which may also prove useful in the Plaintiffs' *Monell* claims against the City.

In conclusion, because Defendants have failed to identify any legitimate basis for refusing to produce the S.O.S. recordings, and because the recordings could lead to the discovery of admissible evidence, the Court accepts Defendants' offer to amend its answer to respond to this request. Plaintiffs' Motion to Compel the Production of the S.O.S. recordings is granted.

### B. The Grand Jury Secrecy Privilege

"Rule 6(e)(2) imposes a general rule of secrecy on grand jury proceedings. By its terms, it applies only to 'matters occurring before the grand jury.' Matters occurring before the grand jury constitute any items that are sufficiently 'grand jury related,' such as documents which are akin to grand jury testimony." *Pontarelli Limousine,* 652 F.Supp. at 1430. Moreover, "when testimony or data is sought for its own sake for its intrinsic value in furtherance of a lawful investigation rather than to learn what took place before the grand jury, it is not a

9

valid defense to disclosure that the same documents had been, or were presently being, examined by a grand jury." *U.S. v. Stanford*, 589 F.2d 285, 291 (7th Cir. 1978). Thus, documents that have appeared before the grand jury may be released so long as "[their] release will not seriously compromise the secrecy of the grand jury's deliberations." *In re Special March 1981 Grand Jury*, 753 F.2d 575, 578 (7th Cir. 1985).

Here, Plaintiffs seek to compel production of documents relating to the criminal cases against the SOS officers. The Defendants assert that disclosing the documents might "reveal the scope and focus of the federal and state grand juries for the SOS criminal matters." (Defs.' Resp. Opp'n Pls.' Mot. Compel 6.) The Plaintiffs counter that the protective order already in place is sufficient to maintain confidentiality.

The Defendants have not indicated with specificity how the documents requested relate to grand jury proceedings. There is no discussion of grand jury transcripts or anything requested having appeared before the grand jury. This lack of connection is integral to deciding whether the privilege applies, because the grand jury secrecy privilege does not apply if the information requested was "generated apart from the grand jury process, even though it might ultimately be used there." *Pontarelli Limousine*, 652 F.Supp. at 1430.

Moreover, because Plaintiffs seek the documents for their own sake-for their intrinsic value in furtherance of their lawful investigation-rather than to learn what took place before the grand jury, the Defendants' grand jury secrecy defense fails. The practices at issue in the criminal cases against the SOS officers are the same as those at issue in Plaintiffs' *Monell* and RICO claims. Therefore, the documents relating to the criminal cases may lead to the discovery of admissible evidence that supports those claims.

The City has already produced some of the documents in response to this request. The City has failed, however, to identify any legitimate basis for refusing to produce the remaining documents relating to the more than two-year-old criminal cases against the SOS officers. Because the documents are sufficiently protected by the current protective order and are being requested for their intrinsic value to Plaintiffs' investigation, the Court accepts Defendants' offer to amend its answer to respond to this request. Plaintiff's Motion to Compel the Production of the S.O.S. recordings is granted.

### C. The Work Product Privilege

The work product doctrine protects "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative." Fed. R. Civ. P. 26(b)(3). "While 'the mental impressions, conclusions,

11

opinions, or legal theories of an attorney or other representative of a party concerning the litigation' are protected by the work product doctrine, the disclosure of *facts* cannot be precluded simply because the facts were learned by an attorney." *Southern Illinois Laborers' and Employers Health and Welfare Fund v. Pfizer*, No. 06 C 1818, 2007 WL 4557100, at *2 (N.D. Ill. 2007)(quoting Fed. R. Civ. P. 26(b)(3)).

Interrogatory number two of Plaintiffs' Second Motion to Compel asks if Defendants have reviewed all databases and sources of information regarding C.R.s. Defendants assert that answering this question would reveal information protected by the work product privilege. Plaintiffs counter that they are seeking factual information regarding whether both databases that contain C.R.s have been searched.

Defendants do not explain how answering this question would reveal work product, and the court finds that it would not. Here, the Plaintiffs have inquired into whether all sources for the documents have been examined. In *Southern Illinois Laborers*, the court explained that "[i]dentifying the source of specific documents will not reveal the mental processes or litigation strategy of . . . counsel." 2007 WL 4557100, at *3. Similarly, in the instant case, the Defendants can inform the Plaintiffs as to which sources they examined to provide the C.R.

files, without providing any insight into their litigation strategy.

Moreover, Plaintiffs have shown that the interrogatory seeks information reasonably calculated to lead to admissible evidence. The secondary database potentially contains additional C.R. files. Thus, determining whether all databases have been searched is relevant to the subject matter of the case and to the development of the Plaintiffs' claims. Therefore, this Court accepts Defendants' agreement to amend its interrogatory answer and answer this request. Plaintiff's motion to compel a response to interrogatory number two regarding the production of C.R. files is granted.

### III. Additional Discovery

#### A. BrainMaker Discovery

Plaintiffs seek production of "all Documents relating to the decision to no longer utilize and/or dismantle the BrainMaker[3] program in Chicago Police Department." (Pls.' Second Mot. Compel Disc. at 6.) In *Craft v. Flagg,* the Plaintiffs requested discovery into the BrainMaker program. No. 06 C 1451,

---

[3] "BrainMaker is a software program, considered at some time in the 1990's by the Chicago Police Department, which would purportedly identify characteristics of individuals that are found in the already existing database for the City of Chicago and "red flag" those individuals as being potentially problematic officers." *Craft v. Flagg*, No. 06 C 1451, 2008 WL 5339052 at *3 (N.D. Ill. Dec. 16, 2008).

2008 WL 5339052, at *3 (N.D. Ill. Dec. 16, 2008). Plaintiffs claim that "the City's failure to utilize this program is evidence of their deliberate indifference." *Id.* This Court rejected this argument, explaining that "evidence concerning BrainMaker, which was merely considered by the City over a decade ago, sheds little light on the failings of the City's current system." *Id.* at *4.

Plaintiffs attempt to distinguish *Craft* by arguing that their focus is "the City's <u>decision</u> to no longer conduct pattern analysis" by using BrainMaker, rather than regarding "the program itself." (Pls.' Second Mot. Compel Disc. 6.) This distinction is unavailing. At their core, Plaintiffs' argument and the argument advanced by the *Craft* plaintiffs are the same – that the City's failure to use BrainMaker is evidence of the City's deliberate indifference. Moreover, just as in *Craft*, Plaintiffs are seeking discovery regarding a program that was merely considered by the City over a decade ago. Discovery regarding this program "is simply too speculative and too remote to justify requiring the City to expend the considerable amount of time and money necessary to comply with such a request." *Id.* at *4; see also, Almaraz v. Haleas,* 602 F.Supp.2d 920, 926 (N.D. Ill. 2008)(positing that "[i]t is . . . doubtful that a program [BrainMaker] phased out in 1996 is relevant to an arrest in 2007.")

### B. General History Printouts

The Plaintiffs have requested that the General History Printouts ("histories") for all officers who were members of the S.O.S. in 2005 be produced (approximately 280 officers). Histories are documents that "are run by officer and show when the officers were hired and the dates of each of their assignments within the CPD." (Defs.' Resp. Opp'n Pls.' Mot. Compel at 4.) Because these printouts are only two pages long, printing even 300 of them would not be unduly burdensome.

This Court is particularly concerned, however, by the fact that the histories reveal what unit the officers are assigned to, since release of this information could threaten the safety of officers in investigative units. The Court acknowledges that Plaintiffs must demonstrate the associations of the S.O.S. members through time in order to establish their RICO claim. However, establishing this claim should not be done at the cost of the safety of officers who are not parties to this litigation.

For the above reasons, the production of general history printouts will be limited to those that have already been provided. Therefore, the Court denies Plaintiff's motion to compel production of the general history printouts for all officers who were members of the S.O.S. in 2005.

### C. Other Outstanding Documents

15

*Request Number 8* seeks "any criminal histories of the unindicted Defendant Officers." (Pls.' Mot. Compel 6) Defendants have affirmatively stated that they possess no responsive documents to Request Number 8; therefore, that request is denied.

*Request Number 23* seeks "documents relating to any audit or inspection of the S.O.S. by the Department." *Id.* Defendants indicate that the Department's Auditing & Internal Control section is currently searching for responsive documents. Based on the Defendants' representation that they do not currently have any responsive documents, this portion of the Plaintiffs' Motion is denied. However, if the Defendants uncover responsive documents, they must produce those documents.

*Request Number 24* seeks "documents relating to a system of rating the S.O.S. officers' job performance." *Id.* Based on the Defendants' representation that they do not currently have any responsive documents, this portion of the Plaintiffs' Motion is denied. If the Defendants uncover responsive documents, they must produce those documents.

*Request Number 25* seeks "documents relating to accountability sessions described by Deputy Superintendent Starks in his deposition." *Id.* Defendants assert that they will produce responsive documents to the Plaintiffs. If the

16

Defendants uncover additional responsive documents, they must produce those documents as well.

*Request Number 27* seeks "documents relating to any press releases issued or press conferences held by the City regarding the S.O.S." *Id.* Defendants assert that they have produced responsive documents to this request. The Defendants must affirmatively state that they possess no additional responsive documents.

*Request Number 29* seeks "documents relating to the program implemented by the Department to monitor officers with numerous C.R. files." *Id.* Defendants argue that this evidence is not discoverable, noting that the program referenced here was "implemented two years after the incident at issue in plaintiffs' complaint." (Defs.' Resp. Opp'n Pls.' Mot. Compel at 11-12.) Defendants cite *Calusinski v. Kruger*, 24 F.3d 931, 936 (7th Cir. 1994, for the proposition that "subsequent conduct is irrelevant to determining the [municipality's] liability for the conduct of its employees on [the date of the underlying incident]." *Id.* In that case, however, the subsequent conduct was a single alleged incident that was similar in nature to the alleged incident in the case. *Calusinski*, 24 F.3d at 936.

Here, however, the Plaintiffs request information pertaining to a program implemented by the Defendants. The Seventh Circuit has recognized that "subsequent conduct by a

17

municipal policymaker may be used to prove preexisting disposition and policy." *Sherrod v. Berry*, 827 F.2d 195, 205 (7th Cir. 1987), *vacated on other grounds*, 835 F.2d 1222 (7th Cir. 1988). More recently, in *Keys v. City of Harvey*, the court denied the defendant's request to exclude evidence of the city's failure to enact any policies or procedures in response to an underlying incident. No. 92 C 2177, 1996 WL 34422, at *4 (N.D. Ill. Jan, 26, 1996). The *Keys* court cited with approval *Foley v. City of Lowell*, 948 F.2d 10 (1st Cir. 1991), which "affirmed the trial judge's admission of post-event evidence to prove a policy or custom of ignoring complaints of excessive force." *Id*.

This Court agrees with the First Circuit's persuasive reasoning. The standard for discovery is not whether the information is in fact admissible, but whether it may lead to admissible evidence. The Court rejects the Defendants' contention that the evidence is de facto irrelevant to determining municipal liability, and Request Number 29 is granted.

*Request Numbers 35 and 36* seek "records relating to settlements of cases involving the S.O.S." (Pls.' Mot. Compel 6) Defendants argue that investigating the existence- as opposed to merely the contents- of such settlements would be unduly burdensome, without explaining why such a task would be so arduous. This Court finds it unlikely that it would be unduly

burdensome to determine whether, and how many, settlements have occurred in cases involving the S.O.S.

However, regarding the settlement agreements themselves, the Court agrees with Defendants that examining and producing all of the settlement agreements involving the S.O.S. officers would be unduly burdensome. Therefore, production of settlement agreements, like the general history printouts, will be limited to only those involving the Defendant Officers.

Defendants note that the settlement agreements may not lead to admissible evidence. While that is a possibility, the discovery rules do not require certainty- only a reasonable possibility that the requested documents may lead to admissible evidence. Therefore, Plaintiffs' request numbers 35 and 36 are granted, with discovery limited to agreements involving the Defendant individual officers.

*Request Number 37* seeks "documents relating to any audits of the OPS or Internal Affairs division by the City." *Id*. Based on the Defendants' representation that they do not currently have any responsive documents, this portion of the plaintiff's motion is denied. If the Defendants uncover responsive documents, they must produce those documents.

This Court accepts Defendants' offer to amend their response to Request Numbers *1, 9, and 10,* as requested by the Plaintiffs. Therefore, Request Numbers 1, 9 and 10 are granted.

## CONCLUSION

For the reasons set forth above, Plaintiffs' First and Second Motions to Compel are granted in part and denied in part. Therefore, Defendants shall produce the granted discovery in accordance with this Opinion and Order.

Dated: December 14, 2009          ENTER:

*Arlander Keys*
ARLANDER KEYS
United States Magistrate Judge