# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| NOEL PADILLA, SOCORRO PADILLA, LOURDES PADILLA, IRENE SANTIAGO and ERLING JOHNSON, | Case No. 06 C 5462 |
| Plaintiffs, | Judge Milton I. Shadur |
| v. | Magistrate Judge Arlander Keys |
| CITY OF CHICAGO, et al., | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

This case is before the Court on the Plaintiffs' motion to compel the City of Chicago to respond to discovery "regarding the City's broken disciplinary and supervisory systems." As they have in the past, the parties dispute the reasonable parameters of discovery with regard to the plaintiffs' *Monell* claim against the City; the plaintiffs have moved to compel answers to discovery requests that seek information on a department-wide basis for a period of five years. For the reasons set forth below, the motion is denied.

## BACKGROUND FACTS

Plaintiffs allege that in 2005, several Chicago Police Officers falsely arrested Noel Padilla, illegally searched his residence, as well as that of his parents and his friends.

Plaintiffs filed suit under 42 U.S.C. § 1983 against the City and the individual defendants for the alleged violation of their constitutional rights. During the course of this litigation, the parties have skirmished many times over the reasonableness of discovery requests. The latest involves the plaintiffs' requests for information (including complaints, assignments and disciplinary histories) relating to each and every officer who worked for the Chicago Police Department from January 1, 2000 through December 31, 2005. Specifically, the plaintiffs have moved to compel responses to Plaintiffs' Fourth Set of Requests for Production Numbers 7 through 33 and 35; they also seek to compel answers to their Third Set of Interrogatories Numbers 1 and 3 through 23.

Request number 7 seeks "[a]ll data relating to the complaint and disciplinary histories of each and every Chicago police officer for the relevant time period, including but not limited [to] that which shows the following for each officer (identified by name, star and employee number): a. The Complaint Register number; b. The date of the Complaint; c. The category code; and

d. The race of the complaining witness(es).

Request number 8 seeks "[a]ll data relating to the assignment history of each Chicago police officer (identified by name, star, and employee number) including but not limited to the date of hire and each unit of assignment during the relevant time

period. And number 9 seeks "all data showing the beat numbers and/or teams of assignments for each Chicago police officer (identified by name, star, and employee number) and the dates of each such assignment during the relevant time period."

Requests 10 and 17 deal specifically with the officers assigned to the Enforcement Division of the Special Operations Section; requests 11 and 12 seek data showing the number of complaints received by each Chicago police officer, and the number of officers with complaints numbering within specific ranges; requests 13, 14, 15 and 16 seek information on every police officer who had more than 11 complaints, as well as a variety of data relating to those complaints and those officers. Many of the requests seek the same types of information, organized in different ways. Some requests seek information about the number of complaints received in each complaint category; some seek information about how each complaint was investigated, the number of complaints sustained (either on recommendation or on final disposition), the number of complaints wherein disciplinary action - suspensions, reprimands, separation - was taken. The plaintiffs seek information about how databases are created and maintained within the Chicago Police Department, as well as copies of the databases themselves. Request 33 seeks "all documents relating to the consideration by the City of Chicago and/or the Chicago Police Department of whether to

3

utilize any employee evaluation process in the Department in the last ten years including but not limited to any emails, memorandum, meeting minutes or notes, and Research and Development files/documents."

The Plaintiffs seek information about the substance of all complaints, the substance of all investigations and the substance of all disciplinary actions taken - across the department and across the 5-year range they've defined as the relevant time period. In short, the plaintiffs' requests seek an extraordinary amount of paperwork, documents and information - the bulk of which has nothing to do with the officers accused of wrongdoing in this case, or the misconduct alleged in this case. In request 35 they seek data showing each and every complaint filed against Officers Joseph Miedzenowski[1], Corey Flagg and Broderick Jones - whose names do not appear in the plaintiffs' complaint - during the entirety of his or her career; for each complaint, the plaintiffs seek information including the complaint number, the date received, the category codes, the race of the complaining witness, the disposition and disciplinary recommendation made by OPS or IAD, the disposition and disciplinary action taken; the

---

[1] According to the plaintiffs, Miedzenowski was the leader of a police-led crime ring and "the most corrupt cop" in Chicago history. *See* Craig B. Futterman, *The Use of Statistical Evidence to Address Police Supervisory and Disciplinary Practices: the Chicago Police Department's Broken System*, 1 DePaul Journal for Social Justice, 251, 287 (2008)(attached as Exhibit D to Plaintiff's Motion to Compel).

4

final disposition; the final disciplinary action; and the status of the complaint (e.g., open or closed) and, if closed, the date on which it was closed. Again, that is an extraordinary volume of discovery about people and matters having nothing to do with this case.

In their Third Set of Interrogatories (plaintiffs seek to compel responses to 1, 3-23), the plaintiffs seek largely the same information; in fact, they actually provided in the requests that the interrogatories could be answered by providing the data requested in Plaintiff's Fourth Set of Requests for Production, Nos. 7-25. The City objected to each of the interrogatories.

**DISCUSSION**

Under the Federal Rules of Civil Procedure, courts should permit "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Relevant information sought to be discovered need not be admissible at trial; rather, it is enough that "the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* To determine what is relevant, the Court looks first to the plaintiffs' claims.

In their amended complaint, the plaintiffs allege that Officers Herrera, Delbosque, Hopkins, Zogg, Markiewicz and other unknown officers, without provocation and for no reason detained Noel Padilla, searched his home, searched his friend's home,

5

demanded guns or money, searched his mother's home, and then unlawfully charged him with delivery of a controlled substance. First Amended Complaint, ¶¶4, 6-16. They further allege that Mr. Padilla served nine months in prison on this charge – he was in custody from October 15, 2005 through July 17, 2006. *Id.*, ¶17. They allege that, on September 15, 2006, the state dismissed the charges against Noel Padilla.[2] *Id.*, ¶18. Mr. Padilla alleges that the defendants conspired to falsely charge him with a crime they knew he had not committed and to search his residence, as well as that of his parents and his friend, in knowing violation of the plaintiffs' rights.

The plaintiffs also allege that the constitutional violations inflicted upon the plaintiffs "were caused in part by the customs, policies, and practices of the defendants, as promulgated, enforced, and disseminated by the City of Chicago, the Mayor of Chicago, the City Council, members of the City Council, the aldermen, the Chicago Police Department, the Chicago Police Board, members of the Chicago Police Board, the Office of Professional Standards, and Superintendent Cline,

---

[2]The plaintiffs allege in their complaint that the case against Mr. Padilla was dismissed on *nolle prosequi*, which they contend evidences his innocence. First Amended Complaint, ¶18. The relevant records are not before the Court, and it really is not relevant for purposes of today's ruling, but it is entirely possible that the dismissal was the result of negotiations between Mr. Padilla and the prosecutor, given that he had already served time.

6

whereby those charged with ensuring compliance with the Constitution of the United States, in this case and many other cases, instead deliberately, willfully, and wantonly encouraged the infliction of physical and psychological intimidation onto the citizens of the City of Chicago in violation of the United States Constitution." First Amended Complaint, ¶21. More specifically, the plaintiffs allege that the City willfully, wantonly and deliberately failed to train, supervise and discipline police officers in order to prevent unconstitutional and criminal misconduct by police officers; failed to adequately investigate and substantiate allegations of unconstitutional and criminal misconduct by police officers; and failed adequately to discipline police officers who engaged in unconstitutional and criminal misconduct. *Id.*, ¶¶22(h)-(k).

In their opening brief filed in support of the current motion to compel, the plaintiffs characterize their *Monell* claim as alleging that the City had the ability to identify and track individual groups, units and officers to determine whether patterns of misconduct existed, and that, despite this, the City chose not to track, identify and control repeat abusers, with deliberate indifference to the predictable constitutional harm others would suffer at the hands of those abusers. Additionally, the plaintiffs allege that, if the City had utilized the available systems and information to identify and

track repeat abusers, it would have identified the SOS officers and could have prevented the violations of Plaintiffs' rights. These allegations, the plaintiffs contend, justify the broad, far-reaching discovery requests contained in their Fourth Set of Requests for Production and in their Third Set of Interrogatories. The plaintiffs argue that the department-wide data and information is necessary to establish that the City had a policy of indifference – the same argument that the plaintiffs' experts laid out in the article already cited, which was written in the wake of the *Bond v. Utreras* case. The Court disagrees.

The Supreme Court set forth the elements of a civil rights claim against a municipality in *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978). Under *Monell*, a §1983 plaintiff must show that he or she suffered a deprivation of a constitutional right; that the action was taken pursuant to a custom, policy or practice of the local government unit; and that such action was the cause of the deprivation. *Monell*, 436 U.S. at 690-92. "*Monell* liability is not a form of *respondeat superior*; instead, a municipality can only be held liable 'when execution of [its] policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible for under section 1983.'"

*Valentino v. Village of South Chicago Heights*, 575 F.3d 664, 674-75 (7th Cir. 2009)(quoting *Monell*, 436 U.S. at 694).

In *Monell*, the Supreme Court held that "official policy must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Polk County v. Dodson*, 454 U.S. 312, 326 (1981)(citing *Monell*, 436 U.S. at 694; *Rizzo v. Goode*, 423 U.S. 362, 370-377, 96 S.Ct. 598, 603-607, 46 L.Ed.2d 561 (1976)). See also *Thomas v. Cook County Sheriff's Department*, 604 F.3d 293, 306 (7th Cir. 2010)(using the "moving force" language). The Seventh Circuit noted in *Thomas* that "[i]n § 1983 actions, the Supreme Court has been especially concerned with the broad application of causation principles in a way that would render municipalities vicariously liable for their officers' actions." *Thomas*, 604 F.3d at 306; see also *Wright v. City of Chicago*, No. 09 C 3489, 2010 WL 4875580, at *3 (N.D. Ill. Nov. 23, 2010). Where, as here, the plaintiffs claim that "the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employees." *Board of County Commissioners of Bryan County, Okl. v. Brown*, 520 U.S. 397, 405 (1997). A "general allegation of administrative negligence fails to state a constitutional claim cognizable

9

under § 1983." *Polk*, 454 U.S. at 326.

In *Wright*, the plaintiff was arrested for a municipal violation and his car was impounded; he was released the next day and eventually all charges were dismissed and the City reimbursed him the money he had paid in towing and storage fees. Almost a year later, he was arrested again on a municipal violation and his car was again impounded. He alleged that the officers who arrested him the second time, working out of the same district as those who had arrested him the first time, did so in retaliation for his success in getting the earlier citation dismissed. *Id.*, 2010 WL 4875580, at *1. The court noted that the plaintiff's "claims against the City cannot be as broad as alleging failure to supervise or discipline police officers in general, because that would be, in effect, alleging a negligence claim against the City, which is unavailable under *Monell*." *Id.*, 2010 WL 4875580, at *3. "Instead," the court noted, "Wright's *Monell* claims must be limited to policies and practices that are the *moving force* behind the specific constitutional violations allegedly inflicted on Wright." *Id.* On this basis, the court allowed him to take discovery on his *Monell* claim, but limited that discovery to the particular conduct alleged in the complaint – namely, the court allowed discovery concerning incidents and arrests similar to the plaintiff's arrests; it allowed discovery on the disciplinary

10

history of the named defendants, and with respect to claims of similar misconduct that may have occurred in the past against the officers assigned to that particular district. *Id.*, at *3. Seeking to achieve a similar balance here between the plaintiffs' desire to obtain broad discovery and the defendants' desire to provide only that discovery which is reasonable, relevant and not unduly burdensome or oppressive, the Court will walk a similar line. The plaintiffs are entitled to obtain disciplinary information about the defendants (which the Court understands has already been provided) and about the other officers in the same district (which, again has presumably already been provided). The Court will not compel the City to produce disciplinary histories or other information on a department-wide basis.

Oddly, the plaintiffs' discovery requests suggest that they are seeking to impose liability, not so much because of the City's policy, but because the City's policy caused other people – e.g., the defendants named in the Bond case, John Burge – to engage in misconduct. That is not what the Supreme Court intended in *Monell*. It is not enough for the plaintiffs to throw out statistics to suggest the existence of a policy or custom. To prove their *Monell* claim, they will also need to show that there is "a direct causal link" between the custom or policy and the deprivation." *Mayer v. Edwards*, 538 F.Supp.2d

1041, (N.D. Ill. 2008)(citing *Brown*, 520 U.S. at 404; Woodward v. Correctional Med. Servs. of Ill., Inc., 368 F.3d 917, 929 (7th Cir. 2004)). To date, they have not even argued the point. In fact, if the plaintiffs arguments are accepted, one set of statistical evidence in one case would be enough to prove a *Monell* claim in every case that names a Chicago Police Officer as a defendant. That is not appropriate. Rather, before the City can be liable on a *Monell* claim, the plaintiffs have to actually prove that the defendants named in the case committed the alleged acts of misconduct. If the officers of the "Skullcap Crew" did what Diane Bond alleged they did - and the Court has no reason to doubt that - they belong in a special corner of hell; their conduct is unquestionably abhorrent. But cases like John Burge and the Skullcap Crew may not be used to prove a *Monell* claim in every case filed against a Chicago Police Officer. Although the plaintiffs would be pleased with that result, the law does not so provide.

Here, the Court has no reason to believe - because the plaintiffs have not offered any - that the defendants named in this case fall within the same category as John Burge and the SkullCap Crew; there has been no showing that they were morally corrupt, that they were "repeaters" or that they knew about or were influenced by the "broken disciplinary policy." To be sure, there has been nothing to suggest that the alleged policy

12

was the "moving force" behind the named defendants' alleged misconduct. The plaintiffs cannot use the same generic pool of statistics to prove their *Monell* claim in every case; *Monell* is not so broad that it allows for guilt by association. The plaintiffs must make a showing that the policy existed with respect to the named defendants, and that it was the "moving force" behind the defendants' conduct. No such showing has yet been made. Accordingly, their motions to compel discovery along these lines is denied.

The plaintiffs emphasize the broad discovery that this Court allowed in the *Bond* case. Significantly, however, in *Bond*, there were allegations of a persistent, long-running campaign of harassment; there are no such allegations here. The events described in this complaint all happened the same day. *See City of Oklahoma City v. Tuttle,* 471 U.S. 808, 823-24 (1985), cited in Thompson v. Williams, No. 08 C 6444, 2009 WL 1766774, at *4 (N.D. Ill. June 22, 2009) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell,* unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker.") And, in contrast to *Wright*, there is no allegation here that the conduct was done out of retaliation; indeed, there is nothing in the complaint to

13

suggest that the officers had prior dealings with the plaintiffs or had any reason (justified or unjustified) to want to retaliate against them. In short, there is nothing in the complaint to suggest that the *Monell* discovery produced in *Bond* would be relevant to this case. Unless and until some showing of relevance is made, the Court will not compel the City to produce the broad, burdensome discovery sought.

The plaintiffs would have the Court believe, accepting their statistical analysis as true - that there was a 2 in 1,000 chance of being disciplined for misconduct, that every police officer in the department is assumed to have known that statistic, and that every police officer in the City of Chicago can be presumed to have misbehaved on the basis of that assumption. Putting aside the issues and concerns implicated in the plaintiffs' statistical analysis, there are no doubt thousands of police officers who behave honorably and operate within the boundaries of the constitution because it is the right thing - the moral thing - to do. And, similarly, there are, no doubt, police officers who misbehave, not because they have considered the odds of getting caught and fired, but because they lack the moral center to ignore the temptation. In short, Mr. Futterman's statistics alone are not enough to prove a Monell claim in every case, and the report's existence is not enough, without more, to justify broad, department-wide, multi-

year discovery in every case.

## CONCLUSION

For the reasons set forth above, the Plaintiffs' "Motion to Compel Discovery Regarding the City's Broken Disciplinary and Supervisory Systems" [#366] is denied.

Dated: March 21, 2011

ENTER:

*Arlander Keys*
ARLANDER KEYS
United States Magistrate Judge