IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

NOEL PADILLA, et al.,                 )
                                      )
                  Plaintiffs,         )
                                      )
      v.                              )    No. 06 C 5462
                                      )
CITY OF CHICAGO, et al.,              )
                                      )
                  Defendants.         )

MEMORANDUM OPINION AND ORDER

Noel, Socorro and Lourdes Padilla, together with Irene Santiago and Erling Johnson, have invoked 42 U.S.C. §1983 ("Section 1983") to sue the City of Chicago ("City") and certain of its police officers ("Defendant Officers") assigned to the Special Operations Section ("SOS"). Plaintiffs assert that Defendant Officers violated their constitutional rights and that City caused that violation by failing to train, supervise and discipline police officers and to track reports of officer misconduct throughout the Chicago Police Department ("Department"). For discovery purposes the case was referred to Magistrate Judge Arlander Keys, who denied plaintiffs' motion to reconsider an earlier order that had refused to compel City to produce certain documents relating to its allegedly "broken disciplinary and supervisory systems."

Plaintiffs have again sought reconsideration of that ruling, this time under Fed. R. Civ. P. ("Rule") 72(a), which permits this Court to modify or set aside the ruling to the extent that

it is clearly erroneous or contrary to law. For the reasons stated in this memorandum opinion and order, plaintiffs' motion is granted in part and denied in part.

## Municipal Liability Under Section 1983

Under <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 694 (1978) a plaintiff seeking to hold a municipality responsible for a Section 1983 violation must do so on a showing of direct rather than vicarious liability. Where as here plaintiffs claim "that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee" (<u>Board of County Comm'rs of Bryan County, Okla. v. Brown</u>, 520 U.S. 397, 405 (1997)).

For that purpose <u>Monell</u> and its almost innumerable progeny have prescribed and applied a few alternative routes for reaching that goal. In this instance plaintiffs' chosen path is well described by the plurality opinion in <u>City of St. Louis v. Praprotnik</u>, 485 U.S. 112, 127 (1988)(internal quotation marks omitted), under which they must establish that City's alleged failure to train and discipline its police officers and track misconduct reports constitutes "a widespread practice that, although not authorized by written law or express municipal policy , is so permanent and well settled as to constitute a

custom and usage with the force of law."

In addition, plaintiffs must demonstrate that City condoned the asserted practice by acting with deliberate or reckless indifference toward complaints of misconduct (Wilson v. City of Chicago, 6 F.3d 1233, 1240 (7th Cir. 1993)). Merely showing that City responded slowly, ineffectively or even carelessly is not enough (id.). Moreover, "the existence or possibility of other better policies which might have been used does not necessarily mean that the defendant was being deliberately indifferent" (Frake v. City of Chicago, 210 F.3d 779, 782 (7th Cir. 2000)).

To demonstrate that City had the ability to identify and track officers accused of repeatedly violating citizens' constitutional rights but failed to address those abuses adequately, plaintiffs seek what they describe as "summary data" regarding complaints of police misconduct on a Department-wide basis (P. Mem. 2). At issue here are plaintiffs' Fourth Set of Requests for Production ("Requests") Nos. 7-16, 18-24, 26 and 35 (P. Mem. 6, 17, 18).[1]

---

[1] Peculiarly, plaintiffs also characterize Requests 28-31 as "discovery in dispute" despite City's production of nearly 2,000 pages of documents in response to those Requests (P. Mem. Ex. C at 16-17). Because plaintiffs offer no explanation as to why that production is insufficient or as to how the Magistrate Judge's judgment as to Requests 28-31 could be considered clearly erroneous, this Court of course upholds Judge Keys' ruling on those items. And although plaintiffs had also moved for reconsideration of Judge Keys' refusal to compel answers to plaintiffs' Third Set of Interrogatories Nos. 1 and 3-23, their counsel now admit that those Interrogatories seek the same

3

Specifically, for the 2000 to 2005 period plaintiffs seek (1) the complaint and assignment histories of every City police officer (Nos. 7-9, 11), (2) disciplinary outcomes for every officer who either accrued more than 10 complaints (Nos. 13-16) or was assigned to SOS in 2004 or 2005 (No. 10), (3) breakdowns as to all officers by number of complaints received, assignment units and referral to "Early Warning" programs (Nos. 12, 20, 21) and (4) breakdowns of complaints by type, assignment unit of the officer and final outcome (Nos. 18-19, 22-24). Plaintiffs also seek a list of City's assignment units in 2004 and 2005 (No. 26) and detailed information regarding every complaint received by three specific nonparty officers throughout their careers (No. 35).

Judge Keys held that while discovery pertaining to Defendant Officers and other SOS officers is appropriate, plaintiffs cannot justify taking discovery on every City police officer and every report of alleged misconduct of any kind across the Department during a five-year period. Plaintiffs argue that ruling is "clearly erroneous" for two reasons:

> 1. Department-wide summary data is relevant and necessary to plaintiffs' Section 1983 claim against City.
>
> 2. Judge Keys denied not only Department-wide

---

information as the Requests at issue and consequently ask that City respond to one or the other (P. Mem. 6). Hence this opinion addresses only the Requests enumerated in the text.

discovery requests but also those limited solely to SOS.

Plaintiffs' first point as to the potential utility of--and therefore the need for--the Department-wide discovery is well taken. Whether Defendant Officers and their SOS coworkers accrued disproportionately high numbers of civilian complaints but were rarely disciplined in comparison to the rest of Department is clearly relevant to the possible validity of plaintiffs' claim that City was indifferent to the presence of, and the need to deal with, rogue officers.[2] Without Department-wide data plaintiffs would be unable to demonstrate (if such is the case) that the pattern of complaints as to SOS generally and among Defendant Officers specifically stood out from the situation as to the remainder of the police force.

Any more limited comparison as between Defendant Officers and their SOS coworkers would be insufficient, because (according to Defendant Officer Herrera's own admissions) misconduct was officially encouraged by SOS "bosses," which suggests it was widespread throughout the assignment unit (P. Mem. 5). Department-wide statistics are necessary to determine whether the SOS unit as a whole routinely received high numbers of complaints, yet had (or also had) low rates of discipline.

---

[2] It is important to recognize that other evidence now available, such as admissions of misconduct by some SOS members (even including guilty pleas to criminal charges), validates the use of SOS figures as a baseline.

5

It should be remembered that this opinion deals only with the discoverability of possible evidence, not with what the discovered facts will or will not turn out to prove. It need not be assumed that the data gathered will be admissible--the question of admissibility is not before this Court. As Rule 26(b)(1) confirms, the data does not have to be admissible to be a proper subject of discovery.

City's response that it had the ability to track and identify officers who received high numbers of complaints, and that it did in fact identify a pattern of misconduct within SOS, misses the mark. As an initial matter, none of the complaint files produced to plaintiffs contain any pattern analysis, although Department policy requires that any pattern analysis must be included in complaint files (P. Mem. 7). More importantly, even if such pattern analysis took place (which plaintiffs hotly contest), the discovery that plaintiffs seek is nonetheless needed to determine whether City's practice was to ignore available evidence of misconduct.

City correctly asserts that plaintiffs cannot simply throw out statistics to suggest the existence of a policy or custom (Monell, 436 U.S. at 694). That, however, is not the point. If for example the statistics could be viewed by the factfinder as demonstrating that a low rate of findings of misconduct as to SOS officers (who, as already indicated, have been found to have

6

engaged in blatantly improper and illegal activity) is also reflected as to complaints against officers generally, that could well be the basis for a factfinders' decision that City turned a blind eye to the misconduct--and could thus constitute a predicate for Monell liability.

This line of analysis does not, as City would have it, create the prospect that a single set of statistical data could justify Monell liability in every case against a City police officer--a clear contravention of the Supreme Court's admonition that "rigorous standards of culpability and causation" apply to questions of municipal liability under Section 1983 (Bryan County, 520 U.S. at 405). But City fails to cite any authority (and to this Court's knowledge none exists) that prohibits reliance on statistics in conjunction with other evidence. To the contrary, City's claimed authority (Bryant v. Whalen, 759 F.Supp. 410, 423-24 (N.D. Ill. 1991))--quite apart from its nonprecedential status--merely states that statistics <u>standing alone</u> are not enough. Here plaintiffs point to a plethora of additional facts that could provide support for a finding of City's deliberate indifference to misconduct (including admissions from various Defendant Officers), such that plaintiffs should not be precluded from statistical discovery based on the insufficiency of statistics alone.

As to plaintiffs' second point regarding Judge Keys' denial

7

of discovery requests pertaining solely to SOS, once again plaintiffs are correct. Even though Judge Keys acknowledged that discovery pertaining to Defendant Officers and SOS is "entirely appropriate," he denied plaintiffs' motion in its entirety. Because Request No. 10 relates solely to SOS, it should have been enforced.

## Conclusion

Judge Keys was called on to deal with a massive and complex assemblage of documents and with conflicting submissions by the litigants. It is perhaps understandable that defense counsel, whose submissions did not give plaintiffs' arguments their full due, led the able Magistrate Judge down the path reflected in his report. But as the foregoing discussion reflects, this Court has found defendants' perspective skewed, and it has traveled a different path.

Consequently this Court finds clearly erroneous, and it sets aside, Judge Keys' order that plaintiffs are not entitled to Department-wide discovery. City is ordered to respond promptly to Requests 7-16, 18-24, 26 and 35 except to the extent that specific components of any such Requests necessitate an individualized examination of the complaint files themselves.[3]

---

[3] without seeking to define that limited exception, but solely by way of an example, if part of the information sought in a single Request is located in one database while another portion is located in another database, that would not justify defendants' withholding of any disclosure. Instead the

Given the number of officers and complaints at issue, such a one-by-one examination would be unduly burdensome.

_____
Milton I. Shadur
Senior United States District Judge

Date: August 18, 2011

---

responsive information in each database would have to be produced so that plaintiffs could try their hand at any desired assembly of the data.