IN THE UNITED STATES DISTRICT COURT
                   FOR THE NORTHERN DISTRICT OF ILLINOIS
                              EASTERN DIVISION

NOEL PADILLA, et al.,              )
                                   )
                   Plaintiffs,     )
                                   )
        v.                         )        No.  06 C 5462
                                   )
CITY OF CHICAGO, et al.,           )
                                   )
                   Defendants.     )

                     MEMORANDUM OPINION AND ORDER

        This Court's October 2, 2013 memorandum opinion and order

("Opinion") dealt with most (though not all) of defendants' 10

motions in limine in this action (consideration of a few of those

motions was deferred because they interfaced with some of

plaintiffs' 13 motions in limine, one of which was not ripe for

decision because not yet responded to by two of the defendants).

Although the briefing process was completed in the latter respect

nearly two months ago, the pressures of other high-priority

proceedings in other cases on this Court's calendar have blocked

the disposition of the remaining motions until now.

        After a thorough review of the parties' submissions, it

appears that the most orderly approach to the remaining matters

on both sides of the "v." sign calls for consideration of

plaintiffs' motions seriatim (with any related open items on

defendants' side to be folded into that treatment).  After that

analysis has been completed, this opinion will turn to whatever

discussion remains relevant on defendants' previously-undisposed-of motions.[1]

First, P. Motion 1 (Dkt. 609) seeks "to exclude evidence of Noel Padilla's unrelated arrests and convictions." Because attempting to define the notion of what is "unrelated" would really add nothing to the appropriate analytical inquiry, the discussion here will eschew its use.

Instead the analysis of P. Motion 1 can best begin with defendants' disclaimer (Dkt. 659 at 2) of the introduction of prior arrests of Noel Padilla ("Noel") that did not lead to convictions, coupled with their agreement that any convictions that grew out of such arrests but are over ten years old "are outside the parameters identified in Rule 609(b)."[2] Defendants go on to hedge those concessions, however, by holding out the prospect that Noel may "open the door to allow defendants the ability to introduce evidence of his arrest history to contradict a false rosy picture of his character, as it goes directly to the appropriate amount of damages," citing Cobige v. City of Chicago, 651 F.3d 780 (7th Cir. 2011) for that purpose. This Court takes a dim view of that prospect--the type of special factor that led

_____

[1] Paralleling the treatment in the Opinion, plaintiffs' motions will be cited "P. Motion --" and defendants' motions will be cited "D. Motion--."

[2] That speaks of a provision of the Federal Rules of Evidence. This opinion will likewise employ "Rule" for that purpose.

to the ruling in <u>Cobige</u>, <u>id</u>. at 785 is not present here so as to
call for admissibility of such evidence under the balancing
called for by Rule 403.

More substantively, Noel did have one felony conviction
that, because imposed in 2003, does not qualify for exclusion
under Rule 609(b).  But that conviction poses three ironies that
are apparently lost on defense counsel and that call for its
exclusion:

1.  Because the gravamen of the 2003 conviction was
Noel's possession of a gun because he had a prior felony,
its introduction into evidence would be a back door way of
apprising the jury of the earlier conviction that
Rule 609(b) would otherwise bar from the jury's
consideration.

2.  Possession of a gun as such has since been declared
by the Supreme Court to be a constitutional right (this
Court is not suggesting that the criminalization of such
possession by a previously-convicted felon is invalid--it is
rather than when the factors identified in this and the
preceding sentence are looked at separately, the ironies
referred to earlier become apparent).

3.  More importantly in substantive terms, the
conviction at issue was not for a crimen falsi (see Rule
609(a)(2)).  Hence in terms of probative value in the Rule

3

403 balancing process, the 2003 conviction carries little heft.

In summary, this Court holds that the 2003 conviction sustained by Noel should be excluded from evidence because the unfair prejudice caused by its admission would substantially outweigh its probative value. And together with what has been said earlier, that calls for the granting of P. Motion 1 (Dkt. 609) in its entirety.

P. Motion 2 (Dkt. 610) seeks to exclude "any evidence, argument or reference to Mr. Padilla's use of marijuana on October 15, 2005 or on any other date." Defendants' response (Dkt. 665 at 1) states simply:

> Defendants have no intention of using this evidence affirmatively or in any improper argument.

But having said that, defendants' response again seeks to hedge their bet by raising the specter that plaintiffs may "open the door" to such evidence--again attempting to call Cobige to their aid. This Court grants P. Motion 2 (Dkt. 610), making it clear as well that any effort by defense counsel to back door the issue at trial will be met with skepticism.

P. Motion 3 (Dkt. 611) shifts attention to plaintiff Irene Santiago, this time seeking "to exclude any testimony, evidence, argument or comment relating to Irene's former work as a dancer." Defendants' response (Dkt. 660 at 1) asserts:

> Such a motion is premature because this evidence may be
> relevant to challenge the witness' credibility on the
> amount of damages suffered.

Because that response is entirely speculative, P. Motion 3 (Dkt.
611) will be granted, but both sides should understand that this
ruling (based on Rule 403 balancing and the limited probative
value of the evidence as such) may be revisited at trial.

P. Motion 4 (Dkt. 612) asks for the exclusion of "any
evidence, reference or argument relating to Mr. Padilla's
employment history and tax returns."  That motion correctly
points out that with Noel's objection to civil rights abuses
having already been established, what remains is to determine
"the damages owed to him as a result of his false arrest and
malicious prosecution"--a subject as to which the objected-to
evidence is irrelevant.

Once again defendants' response seeks to ride the <u>Cobige</u>
horse, stating:

> Defendants do not intend to use evidence of Noel
> Padilla's stagnant work history or failure to file tax
> returns in any improper fashion.  However, such
> evidence may be relevant in the event that Plaintiff
> testifies regarding inability to work or provide for
> his family as a result of this matter.  Such testimony
> would open the door and make this information both
> relevant and admissible.

That appears to make sense, although it too is speculative--and
that being so, the same disposition just made of P. Motion 3
applies here as well:  P. Motion 4 (Dkt. 612) is also granted,

with this Court prepared to take a fresh look as the issues
evolve at trial.

P. Motion 5 (Dkt. 613) asks that this Court "bar defendants
from presenting any evidence, reference or argument relating to
Noel Padilla and Irene Santiago's challenges with their personal
relationship."  According to that motion, the couple started
dating when they were teenagers and have three children--boys who
are 8, 6 and 5 years old.  As P. Motion 5 at 1 states:

> Although they were in a committed relationship for many
> years, they have had struggles in their relationship
> and separated from time-to-time.  They are currently
> separated.

Defendants respond that it is insufficient to support such a
ban simply to assure that Noel will not claim any damages based
on the couple's separation.  As defendants would have it, "their
relationship issues have a deeper relevance to the issues that
remain besides damages based on loss and separation."  But when
push comes to shove, what defendants assert is that the evidence
will show that the officers' entry into Irene Santiago's home was
consensual, a contention that seems puzzling because what are
currently at issue for trial are only Noel's damages from his
malicious prosecution and imprisonment in Cook County Jail.

What cannot be permitted in any event is what Judge Posner
has referred to in another context as "dwelling lovingly" on
whatever problems existed or now exist in the couple's
relationship.  For now P. Motion 5 (Dkt. 613) is also granted,

but this Court remains open to defendants' fleshing out why some limited reference to the couple's troubled relationship may be relevant to what remains for decision at trial.

P. Motion 6 (Dkt. 614) asks that defendants be barred "from presenting any argument, making any reference, or introducing any evidence that Noel Padilla engaged in a drug transaction or possessed cocaine on October 15, 2005." When this Court granted summary judgment in Noel's favor on his Section 1983 and Illinois false arrest claims, it found that "a jury must necessarily find that at the time of his arrest Mr. Padilla was standing alone outside and did not possess any drugs, yet was arrested for delivering cocaine." And this Court's ruling went farther, extending to a determination that probable cause to believe that Noel had committed any crime was lacking and that the only "evidence" as to a drug transaction was contained in inadmissible and unreliable hearsay reports written by defendants themselves.

As with P. Motion 5, defendants' responsive contention is that they had a legitimate basis for having been led to Irene Santiago's home, so that defendants were assertedly not "rogue police officers who indiscriminately unlawfully searched and robbed people's homes." Apparently the distinction urged by the defendant officers' disclaimer is that they might have had legitimate access to people's homes, ignoring the fact that they then did conduct themselves as "rogue police officers" by the

7

depredations that they then visited on the people whose homes they had entered legitimately.

If then the issue of consensual entry into Irene Santiago's house is placed before the jury, it would necessarily seem that this Court's earlier-referred-to holdings in the summary judgment aspect of this case (as well as its other holdings adverse to defendants) should also be made known to the jury. All of this is a subject that may call for further exploration between now and the time for trial. But in the meantime P. Motion 6 (Dkt. 614) is granted in principal part, while perhaps being subject to denial in lesser part.

P. Motion 7 (Dkt. 615) is best described by a direct quotation. What plaintiffs' counsel ask of this Court is to:

> (1) bind Defendants to the Fifth Amendment assertions they made throughout discovery and instruct the jury that it may draw an adverse inference from their assertions;

> (2) permit Plaintiffs to call defendants to the stand at trial to re-assert the Fifth Amendment;

> (3) bar Defendants from explaining their refusal to testify for any other reason other than their good faith belief that truthful answers may tend to incriminate them; and

> (4) bar defense counsel from making improper arguments about the meaning of Defendants' assertions of the Fifth Amendment privilege.

That has evoked different responses from the individual defendants: Stephen Del Bosque ("Del Bosque"), Margaret Hopkins ("Hopkins") Paul Zogg") and Donovan Markiewicz ("Markiewicz")

have taken one position, while Keith Herrera ("Herrera") has
advanced another.

As for all the individual defendants other than Herrera,
they do not seek to back away from their invariant assertions of
a Fifth Amendment privilege against self-incrimination, but they
resist being called to the stand so that the jury can be apprised
of the adverse inferences from such assertions that have been
available in civil cases ever since <u>Baxter v. Palmigiano</u>, 425
U.S. 308, 318 (1976).  This Court sees no reason that plaintiffs
should not be entitled to the relief they seek, and so P.
Motion 7 (Dkt. 615) is granted as to those defendants.

Defendant Herrera has taken a different tack (the other
defendants have listed him as a trial witness, and he now seeks
to back away from his long-asserted invocation of the Fifth
Amendment to allow him to testify at trial as a substantive
matter).  This Court rejects Herrera's position as both belatedly
asserted and fundamentally unfair:  All of the discovery, and all
of plaintiffs' strategic planning, in this case during its seven-
year history[3] have been predicated on the unbroken scenario in
which defendants' exercise of the Fifth Amendment privilege has
been an integral part.  And with the case now ready for setting a
trial date once the current motions in limine have been dealtwith

_____

    [3]  As might be guessed, this action is the oldest active
case on this Court's calendar by a goodly margin.

in this opinion, any notion of a further longitudinal extension
is unacceptable.

In summary, then, P. Motion 7 is granted in its entirety.
Neither Herrera nor any of the other individual defendants may
back away from their long-asserted reliance on the Fifth
Amendment, and plaintiffs are entitled to call them to the stand
at trial in reliance on their required reassertion of their Fifth
Amendment positions.  This order extends as well to the other
components of P. Motion 7 as quoted at the outset of this section
of the opinion.

P. Motion 8 (Dkt. 616) seeks "to bar improper use of police
resources to run background checks on potential jurors."  That is
the other side of the same coin presented by D. Motion 10, which
seeks "to allow criminal background checks on potential jurors
during voir dire."  Hence this opinion will address both of those
counter-motions together.

In part plaintiffs urge that such police databases "are
restricted to law enforcement purposes only," citing
administrative regulations and an Illinois criminal statute.  And
plaintiffs then go on to urge that "the City's method of using
this information is unfairly one-sided and can cause
complications following the empaneling of the jury," citing a
June 30, 2011 ruling by this Court's colleague Judge Amy St. Eve

in <u>Hill v. City of Chicago</u>, 06 C 6772, that granted a like motion by a plaintiff's counsel there.

In response (and in support of their own D. Motion 10), defense counsel offer to handle the process on an even-handed basis by sharing any results of the investigation simultaneously with plaintiffs' counsel and this Court. That does not necessarily appear wholly unpalatable to plaintiffs' counsel (see P. Motion 8 at 2-3). But matters are made more complicated by this Court's method of jury selection, which does not employ the "struck jury" procedure and accordingly discloses the identity of prospective jurors only as they are successively seated in the jury box during the actual voir dire selection process.

In summary, this issue is one that can best be addressed in the context of the actual trial. In the meantime P. Motion 8 (Dkt. 616), which it will be remembered opposes only the "improper use of police resources," is granted in those terms, while D. Motion 10 (Dkt. 640) is continued until the time of trial because it requires further discussion, which will be held at the customary voir dire conference that this Court convenes shortly before trial.

P. Motion 9 (Dkt. 620) seeks to preclude defendants "from introducing any evidence or making any reference to their personal financial status." That motion was the one that led to the severability of treatment between the Opinion and this

opinion, because defendants Del Bosque and Zogg had sought and
were granted an extension of time within which to respond.  At
the same time Hopkins and Markiewicz had timely filed a statement
that they "do not intend to introduce any evidence or make any
reference to their respective financial statuses at trial," while
Herrera opposed that motion as an adjunct to his here-rejected
effort to testify substantively at trial.  Since then Del Bosque
and Zogg have joined Hopkins and Markiewicz in disclaiming any
intention to offer such evidence, so that Herrera stands alone in
his opposition.

     What this opinion said earlier in rejecting Herrera's effort
to reverse fields applies here with even greater force.  Any
asserted inability of a plaintiff to claim punitive damages is a
classic affirmative defense (see Taylor v. City of Chicago, 09 C
5092, 2012 WL 3686642 at *3 (N.D. Ill. Aug. 24), relying on
Kemazy v. Peters, 79 F.3d 33, 36 (7th Cir. 1996) and Carter v.
United States, 333 F.3d 791, 796 (7th Cir. 2003))--and Herrera
has not only failed to advance such an affirmative defense but
has also failed to produce any evidence of his financial
situation during discovery.  It is too late in the day for
Herrera to switch signals--and moreover, his attempted total
stonewalling on financial information by wrapping his
nonresponses in a Fifth Amendment mantle might have been
problematic as well.

In summary, Herrera's objection is not well taken, and the other defendants have offered no opposition. P. Motion 9 (Dkt. 620) is granted in its entirety.

P. Motion 10 (Dkt. 617) seeks "to bar any argument that appeals to the jurors' pecuniary interests as taxpayers," to which all defendants have responded that they "do not intend to make any improper arguments regarding taxpayer dollars or other budgetary issues." Although defense counsel couple that disclaimer with a statement that the motion "is unnecessary" and they consequently ask for denial of that motion, the more appropriate treatment is rather to grant P. Motion 10 as having been unopposed, and this Court so orders.

P. Motion 11 (Dkt. 618) asks that defendants be prohibited "from presenting any evidence, reference or argument relating to Noel Padilla's alleged past gang affiliation." Once again defendants state that they "do not indent [sic] to affirmatively use evidence of Noel Padilla's gang affiliation to unfairly prejudice the jury against them, nor do defendants intend to make improper arguments"--but once again defendants hedge that disclaimer by attempting to draw upon their all-purpose (from their perspective) use of the opinion in the <u>Cobige</u> case. Both this Court (see <u>Ramirez v. City of Chicago</u>, 05 C 317, 2009 WL 3852378 at *2 (N.D. Ill. Nov. 17) and many of its colleagues have taken a dim view of such evidence because it poses such a serious

risk of unfair prejudice--as, more importantly, our Court of
Appeals has held on more than one occasion (see, e.g., <u>United
States v. Irvin</u>, 87 F.3d 860, 865-66 (7th Cir. 1996) and <u>United
States v. Sargent</u>, 98 F.3d 325, 328 (7th Cir. 1996)).

Moreover, defense counsel's reference to Noel's "open[ing]
the door to such evidence by putting his character into issue" is
the kind of boilerplate misrepresentation that does counsel no
credit--as P. Motion 11 at 1-2 states:

> Mr. Padilla is not an affiliate of a gang and was not
> in a gang at the time of his arrest.  A Chicago Police
> Department arrest report from early 1998 (more than 15
> years ago) alleges that Mr. Padilla was a member of a
> gang.  This report, which plaintiff disputes, has no
> relevance in this trial.

Even apart from the strong judicial language in <u>Irvin</u> and other
cases, no good faith predicate has been advanced for defense
counsel's attempted hedge by again citing <u>Cobige</u>, whose holding
is totally inapplicable to this issue.  Hence P. Motion 11 (Dkt.
618) is also flat-out granted.

P. Motion 12 (Dkt. 619) seeks to bar relitigation of matters
decided against defendants in this Court's summary judgment
decision as to liability.  More specifically, the motion requests
that this Court:

> (1)  instruct the jury on which claims Defendants'
> liability has already been established as a matter of
> law,
>
> (2)  issue an order deeming undisputed facts
> established at summary judgment as stipulated for trial
> and binding upon the parties, and

14

(3)  bar Defendants from disclaiming their
    established liability at trial.

Defendants respond that they "have no quarrel with that request,"
and they go on with a reciprocal assertion "that Plaintiffs are
equally bound to this Court's finding on summary judgment,
precluding them from relitigating those issues as well."

        To implement P. Motion 12, plaintiffs' counsel has attached
a series of proposed stipulations embodied in its "Exhibit A:
Facts Not Genuinely in Dispute."  Defendants' response has
interposed no objection to the first 28 paragraphs tendered there
by plaintiffs' counsel, but they interpose objections to the
other 15 paragraphs in Ex. A, paragraphs that deal (1) with
defendants' guilty pleas to charges of conduct that shares
attributes present in what has been established in this case and
also (2) with the numbers of other complaints of police
misconduct that have been lodged against each of the individual
defendants.

        As for defendants' criminal convictions, P. Motion 13
(Dkt. 627) musters powerful arguments that such evidence (1) is
relevant (and highly probative) to prove plaintiffs'
participation in a conspiracy and also (2) bears directly on the
potential for imposition of punitive damages against defendants.
All of that argument, together with the supporting caselaw
proffered by P. Motion 13, persuasively negates the excludability
of such evidence under Rule 404(b).  As for the evidence of other

                                15

complaints of police misconduct launched against defendants, that
subject will be dealt with later in connection with D. Motion 2.

In summary, P. Motion 12 (Dkt. 619) is granted, subject to
the possible limitation as to the limited portion of its Ex. A
addressed later in this opinion. For purposes of the <u>Conclusion</u>
section at the end of this opinion, however, the motion will be
treated as having been granted.

P. Motion 13 (Dkt. 627) has already been referred to in part
in the just-completed portion of this opinion. Here is how
plaintiffs' counsel summarizes the relief sought in that motion:

> Plaintiffs, through counsel, respectfully move <u>in</u>
> <u>limine</u> to admit: (1) evidence of Defendant Officers'
> conspiracy to target vulnerable individuals for false
> arrest, illegal searches, and robbery, and (2) evidence
> that Defendants acted with impunity in their abuse of
> Mr. Padilla and his family. Specifically, Plaintiffs
> seek to admit evidence of: (a) Defendants' related
> criminal convictions, admissions, and guilty pleas
> describing their conspiracy; (b) the testimony of
> Miguel Melesio; and (c) Defendants' knowledge that they
> would not be punished for abusing Plaintiffs, including
> the testimony of Dr. Steven Whitman.

Plaintiffs' counsel have clearly struck a nerve, for here is the
"Introduction" with which defendants' counsel begin their
response:

> The mere fact that Plaintiffs filed this affirmative
> Motion in <u>Limine</u> to admit evidence implicitly
> acknowledges their recognition that such evidence is
> irrelevant and unfairly prejudicial. Having spent
> years developing this evidence, Plaintiffs cannot so
> easily abandon it now that they have prevailed on
> almost all of the issues of liability and are faced
> with what is essentially a simple ten-minute unlawful
> search claim and a damages trial. Extensive evidence

16

relating to Defendants' criminal convictions to prove
conspiracy here on a search claim, where the only
disputed fact will be consent, is both unnecessary and
unfairly prejudicial.

"Prejudicial"? Of course--and properly so, for all relevant
evidence is by its nature prejudicial to the party against whom
it is offered, else it would not be admissible. But "unfairly
prejudicial"? Not so, with the potential exception addressed
next.

P. Motion 13 at 10 states that plaintiffs have eliminated 9
of 10 other victim-witnesses of defendants' conspiracy who had
been listed at may-call witnesses in the original proposed final
pretrial order. That remaining witness, Miguel Melesio
("Melesio"), is assertedly proffered "to testify about
defendants' similar abuse of him pursuant to defendants'
conspiracy."

At the risk of being simplistic in a case that can scarcely
be characterized in that fashion, this Court is uncertain as to
the need for, or appropriateness of, the Melesio testimony.
Given the fact that the evidence of defendants' guilty pleas and
convictions will be before the jury (evidence that this Court
understands to have stemmed from defendants' unconstitutional
conduct involving Melesio and his family), it would seem that the
jury in this case will be adequately apprised on the issues for
which Melesio's testimony is sought to be elicited. If this

Court is mistaken in its understanding of the underlying facts in that respect, that can be raised by a follow-up motion.

Hence P. Motion 13 (Dkt. 627) is granted in principal part, excluding only its request for admission of Melesio's testimony. This motion's grant includes the testimony of Dr. Steven Whitman, which will be taken up hereafter in conjunction with one of defendants' not-previously-addressed motions.

That then completes (at long last) the discussion of plaintiffs' motions. This opinions turns then to the tag ends of defendants' panoply of motions.

D. Motion 2 (Dkt. 632) seeks to bar the testimony of Dr. Steven Whitman, an opinion witness retained by plaintiffs to perform a statistical analysis of CR files. As defendants would have it, the Whitman testimony is out of the case because Monell liability has been removed from jury determination as a result of (1) this Court's summary judgment determination and (2) the elimination of the need for Monell-type proof.

It is certainly true that the bulk of Dr. Whitman's report and analysis is no longer at issue. But plaintiffs' response makes clear that their now-proposed focus is far more narrow:

> Plaintiffs seek only to present Dr. Whitman's findings that the probability was less than one in a thousand that the Defendants and their SOS teammates would be disciplined in response to a civilian complaint of false arrest, illegal search, robbery, theft, or extortion--Defendants' precise misconduct perpetrated in this case. Dr. Whitman's findings, coupled with the Defendants' Fifth Amendment assertions, are powerful

18

> evidence from which the jury may infer Defendants'
> knowledge of their impunity.

Defense counsel attempt to seize on the phrase "knowledge of their impunity" to urge that in their view such evidence does not bear on the issue of punitive damages, quoting from Seventh Circuit Pattern Instruction 7.2. That position, however, is myopic, for "the reprehensibility of the Defendants' conduct" is one of the factors expressly mentioned in the Pattern Instruction, a concept that surely permits consideration of egregious wrongdoing that is engaged in with knowledge that the chance of being caught and punished is at or near the vanishing point.

Accordingly this Court accepts plaintiffs' drastic curtailment of the originally-proposed Whitman testimony. And in those terms, D. Motion 2 (Dkt. 632) is denied.

Next D. Motion 3 (Dkt. 633) seeks to bar evidence of defendants' criminal convictions. That position has already been rejected in this opinion's discussion of P. Motion 13, and so D. Motion 3 is also denied.

And finally D. Motion 7 (Dkt. 637) asks that plaintiffs be precluded from calling defendants other than Herrera (whose motion to the same effect has already been rejected) to the stand, where each defendant will be required to invoke his or her Fifth Amendment privilege. That contention has already been addressed and rejected in this opinion's discussion of P. Motion

7 (the two 7s are a sheer coincidence in numbering), and so D. Motion 7 (Dkt. 637) is denied as well.

## Conclusion

Defendants have continued their losing ways from the earlier-decided adverse summary judgment as to liability through the current motions-in-limine stage. Here is the scorecard as to the battery of cross-motions that have remained for consideration after this Court's issuance of the October 2, 2013 Opinion:

1. P. Motions 1 (Dkt. 609), 2 (Dkt. 610), 7 (Dkt. 615), 8 (Dkt. 616), 9 (Dkt. 620), 10 (Dkt. 617) and 11 (Dkt. 618), are granted in their entirety, while P. Motion 12 (Dkt. 619) is granted except for a possible partial limitation.

2. P. Motions 3 (Dkt. 611), 4 (Dkt. 612) and 5 (Dkt. 613) are also granted, subject to the possibility that one or more may be revisited at trial.

3. P. Motion 6 (Dkt. 614) is granted in principal part, while perhaps being subject to denial as to some lesser part later.

4. P. Motion 8 (Dkt. 616) is granted as framed by plaintiff.

5. P. Motion 13 (Dkt. 627) is granted in principal part, excluding only its request for admission of the Melesio testimony.

6. D. Motion 2 (Dkt. 632), 3 (Dkt. 633) and 7 (Dkt. 637 are all denied.

7. D. Motion 10 (Dkt. 640) is continued for further consideration at the time of trial.[4]

Lastly, a status hearing is set for December 9, 2013 at 9:30 a.m. to discuss the arrangements for trial of the case.

_____
Milton I. Shadur
Senior United States District Judge

Date: December 3, 2013

---

[4] This Court's review of the case docket reveals a few September 12, 2013 docket entries that should be cleaned up in the interest of orderliness. Those comprise Dkt. 630, a motion by plaintiff to stay a portion of their own claims, and Dkt. 624 and 626, both seeking leave to file oversized motions. All three of those motions are of course granted.